PHOEBE M. DAVIS, Respondent, v. MARY A. BICKLE, as Administratrix, etc., of MARY A. NORTHUM, Deceased, Appellant.

Fourth Department, November 12, 1930.

*Vincent J. Loughlin*, for the appellant.

*John F. Thomas*, for the respondent.

CROSBY, J. Plaintiff brings this action to recover the entire value of decedent's estate upon an alleged oral promise by decedent to leave by will all of her property to plaintiff in consideration of " care, companionship, love, affection, nursing and such other attention as was necessary to the welfare and comfort " of decedent. At the close of the evidence, each side having made a motion for a directed verdict, the trial court, without first denying defendant's motion, granted plaintiff's motion, and directed a verdict for $26,519.87. However, as defendant made no request to go to the jury on any question of fact, she doubtless waived her right to do so.

Plaintiff's services to decedent covered a period of about twenty-one months, during which time both plaintiff and decedent lived in a house furnished by plaintiff's son-in-law to whom decedent paid forty dollars a month for board and room. Plaintiff had other employment than caring for decedent, and her services to decedent consisted largely in carrying decedent's meals to her room for her. Plaintiff's judgment for over forty-two dollars a day for rather slight service is supported by the testimony of witnesses, most of whom are near relatives of plaintiff, and some of whom frankly admit an expectation of indirect benefit from plaintiff's recovery. Plaintiff's witnesses include a son-in-law, two daughters, a daughter-in-law, a mother of plaintiff's son-in-law, and a nurse. The nurse seems to be disinterested. Much of the testimony was vague and ambiguous.

It is unnecessary to cite the numerous authorities of our highest court holding that contracts of the kind here involved must be established by evidence that is clear and above suspicion. The

reason for that rule is obvious. And because of that rule it was of the highest importance to plaintiff's case to furnish the corroboration contained in plaintiff's Exhibit No. 4. That purports to be a typewritten statement, signed by decedent and alleged to have been delivered to one of plaintiff's daughters, and reads as follows:

" ASSIGNMENT.

" For value received in services rendered, kindness, care and attention, I hereby assign, give, transfer, release, grant and deliver to .Mrs. Phoebe Davis of 609 Cedarwood Terrace, all and any of the moneys I have, and particularly all of my moneys in the banks here (being over Twenty Thousand dollars) of which I am the owner, the said Phoebe Davis to have the same as her own from this date on, in payment of all that she has done for me, and that I owe her, I hereby appointing her good daughter Reata my agent for the purpose of making delivery of this gift effective and absolute, and I placing the bank books in her hand, and I merely holding them to receive the interest on the accounts during my life, and she being informed of this in all confidence.

" This is done of my own desire and without any suggestion from anyone, and I am prompted only by fairness and justice.

" I don't want any lawyers to benefit from my savings in any way whatever.

" Signed at Rochester, New York, June 23, 1927.

" MARY A. NORTHUM

" 609 Cedarwood Terrace."

The plaintiff did not sue upon this alleged " assignment," as it is called, but offered it as corroboration of the alleged oral contract. The defendant sought to dispute the genuineness of decedent's signature to Exhibit 4, and to that end presented, as a witness, one Harger, who was paying and receiving teller of one of the banks where decedent for years had kept her money. This witness produced a signature card which he testified was the one on file in his bank, purporting to be decedent's signature card and the one the bank would consult if a question arose at the bank concerning any signature claimed to be that of decedent. In answer to the court's question, " Do you know that is her signature?" this witness answered, " Yes." It did appear, however, that the witness could not swear that he saw decedent write the signature upon the card. However, the court thought that the proof made in reference to this signature card and its long custody by the bank was sufficient to warrant its admission in evidence. It became Exhibit No. 6. With the signature card in evidence, defendant's counsel made numerous efforts, none too skillfully, to

be sure, to elicit from witness Harger a comparison of the signatures to Exhibits 4 and 6 respectively. (Civ. Prac. Act, § 332.) He was met by objections, many of which were over technical, and some of which were not valid. Even the question, " Have you compared them? " (meaning the signatures on Exhibits 4 and 6 respectively) was objected to and the objection sustained. To the question whether the signature on Exhibit No. 4 was genuine, these objections, among others, were made and sustained, " immaterial," " calls for a conclusion" and " the jury is to decide that, and not the witness." The evidence was most material; experts are supposed to give conclusions, and it cannot be improper to assist the jury, by means of evidence, in deciding the questions they have to decide. Other details of this examination could be pointed out that lead to a conviction that plaintiff's counsel was too assiduous in preventing defendant from having a fair opportunity to contest the genuineness of the signature to this most important document. The decedent was for many years a clerk in the surrogate's office. Witnesses to her handwriting should not have been hard to find. Any *bona fide* effort to question her alleged signature should have been fairly met instead of being made the subject of unsound objections. We think the trial court erred in sustaining some of these objections.

For that reason the judgment herein should be reversed on the law and a new trial ordered, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellant to abide the event.